FILED RECEIVED
ENTERED SERVED ON
COUNSEL/PARTIES OF RECORD
JUN 16 2025
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: ________ DEPUTY

Kathleen H. Gallagher, Esq.
Nevada Bar No. 15043
Jeremy M. Lipshutz, MD, Esq.
Nevada Bar No. 15267
GALLAGHER & LIPSHUTZ, PLLC
6120 S. Fort Apache Rd. #100
Las Vegas, NV 89148
Phone/Fax: (702) 381-3770
kathleen@gallagherlipshutz.com
jeremy@gallagherlipshutz.com
*Attorneys for Relator*
*Nevadans Against Fraud*
*on the Government, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA, ex. rel., NEVADANS AGAINST FRAUD ON THE GOVERNMENT, LLC, a Nevada Limited Liability Company,

Plaintiffs

v.

G & M INTERACTIVE, LLC, a Nevada Limited Liability Company; GAUGHAN GAMING MANAGEMENT, LLC, a Nevada Limited Liability Company; GAUGHAN GAMING NEVADA, LLC, a Nevada Limited Liability Company d/b/a GAUGHAM GAMING; KROYER RACING ENGINES, LLC, a Nevada Limited Liability Company; LAS VEGAS DISSEMINATION, INC., a Nevada Corporation d/b/a LAS VEGAS DISSEMINATION COMPANY; MICHAEL J GAUGHAN AIRPORT SLOT CONCESSION, INC., a Nevada Corporation; GAUGHAN SOUTH HOLDING COMPANY, LLC, a Nevada Limited Liability Company; DOES 1 through 10, inclusive and ROE CORPORATIONS 11 through 20, inclusive,

Defendants

2:25-cv-01055-CDS-EJY *SEALED*

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**JURY DEMAND**



GL GALLAGHER & LIPSHUTZ

GALLAGHER & LIPSHUTZ

Qui Tam Relator NEVADANS AGAINST FRAUD ON THE GOVERNMENT, LLC ("Relator") brings this action on its own behalf and on behalf of the United States of America to recover civil damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., ("FCA") against Defendants.

//

//

GALLAGHER & LIPSHUTZ

## Table of Contents


Table of Exhibits ..... 5

I. INTRODUCTION ..... 7

II. JURISDICTION AND VENUE ..... 8

III. PARTIES ..... 9

IV. FEDERAL FALSE CLAIMS ACT ..... 12

V. PAYCHECK PROTECTION PROGRAM ("PPP") ..... 13

A. Laws, Regulations, and Guidance for PPP Loans ..... 13

B. PPP Loan Eligibility ..... 15

C. PPP Loan Definition of "Affiliation" ..... 18

D. PPP Loan Applications ..... 20

E. PPP Loan Forgiveness ..... 23

VI. DEFENDANTS' FRAUDULENT SCHEME ..... 24

A. Affiliated Defendants Were Not Eligible for PPP Loans ..... 24

1. Affiliated Defendants Were Not Eligible for PPP Loans Because They Had Over 500 Employees ..... 25

2. Affiliated Defendants Did Not Meet Alternative NAICS Code Employee or Revenue Based Size Standards Because They Were Significantly Over Those Standards ..... 30

3. Affiliated Defendants Did Not Meet Alternative NAICS Category 72 Size Standard Because They Were Not an Accommodation or Food Service or Had Over 500 Employees Per Physical Location ..... 32

4. Affiliated Defendants Did Not Meet Alternative Net Worth and Revenue Size Standard Because They Had Significantly Over $15 Million in Tangible Net Worth and Over $5 Million Net Income ..... 33

**B. Affiliated Defendants Made False Certifications on Their PPP Loans Applications and PPP Loan Forgiveness Applications and Those Certifications Were Material to The Government's Decision to Pay ....34**

**VII. CLAIMS FOR RELIEF ....36**

**A. First Claim for Relief....36**

**B. Second Claim for Relief....36**

**C. Prayer for Relief....37**

GALLAGHER & LIPSHUTZ

GALLAGHER & LIPSHUTZ
GL

## Table of Exhibits

1. G & M Interactive, LLC's Nevada Secretary of State Business Entity Information
2. Gaughan Gaming Management, LLC's Nevada Secretary of State Business Entity Information
3. Gaughan Gaming Nevada, LLC's Nevada Secretary of State Business Entity Information
4. Gaughan Gaming Nevada, LLC's Clark County Fictitious Firm Name Records
5. Kroyer Racing Engines, LLC's Nevada Secretary of State Business Entity Information
6. Las Vegas Dissemination, Inc.'s Nevada Secretary of State Business Entity Information
7. Las Vegas Dissemination, Inc.'s Clark County Fictitious Firm Name Records
8. Michael J Gaughan Airport Slot Concession, Inc.'s Nevada Secretary of State Business Entity Information
9. Gaughan South Holding Company, LLC's Nevada Secretary of State Business Entity Information and Gaughan South, LLC's Nonrestricted Gaming License Information
10. 13 C.F.R. 121.301 (valid Mar. 27, 2020 to Sept. 7, 2021)
11. U.S. Small Bus. Admin., *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (Apr. 3, 2020)
12. G & M Interactive, LLC's First Round PPP Data
13. Gaughan Gaming Management, LLC's First Round PPP Data
14. Gaughan Gaming Nevada, LLC's First Round PPP Data
15. Hotel Nevada and Gambling Hall, Ltd., LLC's First Round PPP Data and Nevada Secretary of State Business Entity Information
16. Kroyer Racing Engines, LLC's First Round PPP Data
17. Las Vegas Dissemination, Inc.'s First Round PPP Data
18. Michael J Gaughan Airport Slot Concession, Inc.'s First Round PPP Data

GALLAGHER & LIPSHUTZ

19. Gaughan South Holding Company, LLC's First Round PPP Data
20. O'Aces Decatur, LLC's First Round PPP Data and Nevada Secretary of State Business Entity Information
21. High Street, LLC's First Round PPP Data and Nevada Secretary of State Business Entity Information
22. G & M Interactive, LLC's Second Round PPP Data
23. Gaughan Gaming Management, LLC's Second Round PPP Data
24. Gaughan Gaming Nevada, LLC's Second Round PPP Data
25. Hotel Nevada and Gambling Hall, Ltd., LLC's Second Round PPP Data
26. Kroyer Racing Engines, LLC's Second Round PPP Data
27. Las Vegas Dissemination, Inc.'s Second Round PPP Data
28. Michael J Gaughan Airport Slot Concession, Inc.'s Second Round PPP Data
29. O'Aces Decatur, LLC's Second Round PPP Data
30. High Street, LLC's Second Round PPP Data

GALLAGHER & LIPSHUTZ

## I. INTRODUCTION

1. In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and/or administered by the United States Small Business Administration ("SBA").

2. One source of relief provided by the CARES Act was the authorization of $349 billion in potentially forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). To date, Congress has authorized over $659 billion in PPP funding.

3. Congress established the PPP to ensure the continued vitality of small businesses. "Small businesses are the lifeblood of the U.S. economy: they create two-thirds of net new jobs and drive U.S. innovation and competitiveness" while accounting for "44 percent of U.S. economic activity."[1]

4. With limited exceptions not applicable here, only small businesses which, together with their affiliates, had 500 or fewer employees, were eligible to receive PPP loans. Businesses were deemed affiliated when they shared common ownership, management and identity of interest between close relatives.

5. Affiliated Defendants (as defined hereinbelow) violated the False Claims Act by falsely certifying in their loan applications that they were small businesses that were

---

[1] U.S. Small Bus. Admin., Small Businesses Generate 44 Percent of U.S. Economic Activity (Jan. 30, 2019), https://advocacy.sba.gov/2019/01/30/small-businesses-generate-44-percent-of-u-s-economic-activity/.

GALLAGHER & LIPSHUTZ
GL

eligible to receive PPP loans. In reality, however, these entities are "affiliated" with each other under SBA rules and regulations; resulting in a combined total of at least 692 employees listed on Affiliated Defendants' loans, making them ineligible for PPP loans.

6. Affiliated Defendants and their other affiliated companies were "affiliated" under the SBA rules and regulations because they were managed, owned and controlled by Michael Gaughan and his son John Gaughan.

7. Affiliated Defendants nonetheless certified to the SBA that they were eligible for PPP loans. As the direct result of these intentional misrepresentations, Affiliated Defendants received PPP loans – for which they were ineligible – totaling $10,815,493.50. All of these PPP loans were eventually forgiven by the United States government.

8. As a consequence of Affiliated Defendants' misrepresentations, the United States approved and forgave Affiliated Defendants PPP loans which they were not eligible for. The United States would not have approved these PPP loans had it been fully aware of the nature of the combined affiliated entities and that Affiliated Defendants did not constitute small business concerns under the applicable SBA rules and regulations.

9. The plaintiff is demanding a jury trial in this case.[2]

## II. JURISDICTION AND VENUE

10. Relator re-alleges and incorporates the allegations of the paragraphs above as if fully set forth herein.

11. This action arises under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended, and other applicable federal laws.

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. §

---

[2] See section entitled "Prayer for Relief."

1331, 28 U.S.C. § 3730(b), and 28 U.S.C. § 1345.

13. This Court may exercise personal jurisdiction over Defendants, under 31 U.S.C. § 3732(a), because Defendants reside and/or transact business in this judicial district, and some of the violations of 31 U.S.C. § 3729, complained of herein, occurred in the State of Nevada, County of Clark.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a), because one or more of the following has occurred in this District: Defendants are found, have an agent or agents, have contacts or had contacts, or transacts or have transacted business and their affairs in this judicial district; at least one of the acts or omissions complained of herein occurred in substantial part in this district; Defendants prepared and submitted false claims to the United States Small Business Administration ("SBA") in and from this district; and Defendants do business and have deposited proceeds of the fraud described in the complaint within the jurisdiction of this Court.

## III. PARTIES

15. Relator re-alleges and incorporates the allegations of the paragraphs above as if fully set forth herein.

16. Relator NEVADANS AGAINST FRAUD ON THE GOVERNMENT, LLC is Nevada limited liability company doing business in Clark County, Nevada.

17. Relator commenced this action by filing its original complaint under seal, as required by 32 U.S.C. § 3730(b). Prior to filing the original complaint, Relator served the U.S. Attorney General and the U.S. Attorney for the District of Nevada, pursuant to Fed. R. Civ. P. 4, with substantially all material evidence and information it possessed regarding Defendants' false certifications on their PPP loan applications and forgiveness applications.

The evidence and information are contained in the document entitled, "Relator's First Disclosure Statement for Violations of the Federal False Claims Act, 31 U.S.C. § 3729." Relator also served the U.S. Attorney General and the U.S. Attorney for the District of Nevada with a copy of this complaint prior to filing it. Relator is an "original source of the information" within the meaning of 31 U.S.C. § 3730(e)(4)(B). Evidence of Relator being an "original source of the information" can be determined by the Court's review of the disclosures Relator made to the government and her allegations in this complaint.

18. G & M INTERACTIVE, LLC is a Nevada Limited Liability Company doing business in Clark County, Nevada.[3]

19. GAUGHAN GAMING MANAGEMENT, LLC is a Nevada Limited Liability Company doing business in Clark County, Nevada.[4]

20. GAUGHAN GAMING NEVADA, LLC is a Nevada Limited Liability Company doing business in Clark County, Nevada as Gaugham Gaming.[5]

21. KROYER RACING ENGINES, LLC is a Nevada Limited Liability Company doing business in Clark County, Nevada.[6]

22. LAS VEGAS DISSEMINATION, INC. is a Nevada Corporation doing

---

[3] G & M Interactive, LLC's Nevada Secretary of State Business Entity Information, attached as **Exhibit 1**.

[4] Gaughan Gaming Management, LLC's Nevada Secretary of State Business Entity Information, attached as **Exhibit 2**.

[5] Gaughan Gaming Nevada, LLC's Nevada Secretary of State Business Entity Information, attached as **Exhibit 3**; Gaughan Gaming Nevada, LLC's Clark County Fictitious Firm Name Records, attached as **Exhibit 4**.

[6] Kroyer Racing Engines, LLC's Nevada Secretary of State Business Entity Information, attached as **Exhibit 5**.



GL GALLAGHER & LIPSHUTZ

business in Clark County, Nevada as Las Vegas Dissemination Company.[7]

23. MICHAEL J GAUGHAN AIRPORT SLOT CONCESSION, INC. is a Nevada Corporation doing business in Clark County, Nevada.[8]

24. GAUGHAN SOUTH HOLDING COMPANY, LLC is a Nevada Limited Liability Company doing business in Clark County, Nevada and owns Gaughan South, LLC a Nevada Limited Liability Company doing business in Clark County, Nevada as South Point Hotel and Casino.[9]

25. Defendants listed in Paragraphs 18 to 24 are collectively referred to as "Affiliated Defendants".

26. The Defendants "Doe 1 through 50" are the various employees, professionals and other people that Defendants conspired with to submit fraudulent PPP loan applications and PPP loan forgiveness applications. The true names and capacities, whether corporate, individual, or otherwise, of Defendant Does 1 through 50, inclusive, are unknown to Relator, who therefore sues such defendants by fictitious names. Relator is informed, believes, and thereon alleges, that each defendant designated as a Doe is legally responsible for violations of the False Claims Act or other laws, or otherwise causing injury and damages to the United States government.

27. The Defendants "Roe 1 through 10" are the various entities that Defendants

---

[7] Las Vegas Dissemination, Inc.'s Nevada Secretary of State Business Entity Information, attached as **Exhibit 6**; Las Vegas Dissemination, Inc.'s Clark County Fictitious Firm Name Records, attached as **Exhibit 7**.

[8] Michael J Gaughan Airport Slot Concession, Inc.'s Nevada Secretary of State Business Entity Information, attached as **Exhibit 8**.

[9] Gaughan South Holding Company, LLC's Nevada Secretary of State Business Entity Information and Gaughan South, LLC's Nonrestricted Gaming License Information, attached collectively as **Exhibit 9**.



GALLAGHER & LIPSHUTZ

GL GALLAGHER & LIPSHUTZ

conspired with to submit fraudulent PPP loan applications and PPP loan forgiveness applications.

28. Now notified, the government can obtain the identity of the Doe and Roe Defendants referenced in the paragraphs immediately above from Defendants, who have possession of that information.

## IV. FEDERAL FALSE CLAIMS ACT

29. Relator re-alleges and incorporates the allegations of the paragraphs above as if fully set forth herein.

30. The False Claims Act provides for the award of treble damages and civil penalties for, inter alia, knowingly causing the submission of false or fraudulent claims for payment to the United States government.[10]

31. The False Claims Act, provides, in pertinent part, that a person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (a)(1)(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
>
> (a)(1)(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;
>
> . . .
>
> (a)(1)(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties

---

[10] 31 U.S.C. § 3729(a)(1).

GALLAGHER & LIPSHUTZ
GL

> Inflation Adjustment Act of 1990[11] (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.[12]

32. The civil penalty is currently, as of the date of filing of this complaint, $13,946 to $27,894 per claim.[13] However, the penalties are adjusted annually for inflation and will thus likely increase by the time they are assessed in this case.

33. For purposes of the False Claims Act,

> the terms "knowing" and "knowingly"—(A) mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud.[14]

34. Moreover, the term "material" "means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."[15]

## V. <u>PAYCHECK PROTECTION PROGRAM ("PPP")</u>

35. Relator re-alleges and incorporates the allegations of the paragraphs above as if fully set forth herein

### A. Laws, Regulations, and Guidance for PPP Loans

36. On March 27, 2020, the U.S. President signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act")[16] to address the economic fallout of the

---

[11] By virtue of 28 C.F.R. § 85.3(a)(9), the penalty range for violations occurring on or before November 2, 2015, has increased to a minimum of $5,500 and a maximum of $11,000 per violation. The penalties have continually been adjusted for inflation, and the minimum penalty is currently $13,946 and the maximum penalty is $27,894 per violation.

[12] 31 U.S.C. § 3729 (a)(1).

[13] 28 C.F.R. § 85.5(d) (2024).

[14] 31 U.S.C. § 3729(b)(1).

[15] 31 U.S.C. § 3729(b)(4).

[16] Pub. L. 116-136.

COVID-19 pandemic. The CARES Act gave the Small Business Administration ("SBA") funding and authority to establish a new loan program, the Paycheck Protection Program ("PPP") to assist small businesses adversely impacted by the COVID-19 pandemic.

37. The CARES Act permitted the SBA to guarantee 100% of PPP loans[17] and forgive up to the full principal amount of qualifying PPP loans.[18]

38. The SBA and the United States Department of the Treasury ("Treasury") worked together to implement PPP, releasing regulations and guidance on a regular basis.

39. PPP was subsequently expanded by the Paycheck Protection Program and Health Care Enhancement Act on April 24, 2020, and subsequently extended by the Paycheck Protection Program Flexibility Act (the "Flexibility Act") on June 5, 2020.

40. Because PPP is a loan program under Section 7(a) of the Small Business Act, it is subject to the regulations applicable to SBA Section 7(a) business loans except where the CARES Act or applicable regulations provide otherwise.

41. Section 7(a) loan regulations are generally found in 13 C.F.R. part 120. PPP is also subject to SBA affiliation rules in 13 C.F.R. § 121.301(f).[19]

42. In addition to the laws and regulations that apply to PPP loans, the SBA issued ongoing official guidance regarding PPP loans.

43. On April 2, 2020, the SBA published its first Interim Final Rule on

---

[17] 15 U.S.C. § 636(a)(2)(F).

[18] 15 U.S.C. § 636(a)(37)(J).

[19] 13 C.F.R. 121.301 (valid Mar. 27, 2020 to Sept. 7, 2021), attached as **Exhibit 10**. 13 C.F.R. § 121.301 has been amended four times (on Sept. 8, 2021, Dec. 19, 2022, May 11, 2023 and Mar. 18, 2024) since Affiliated Defendants submitted their PPP loan applications and PPP Forgiveness applications. When Relator refers to 13 C.F.R. 121.301, it is referring to the version that was valid an in effect at all times relevant to this Complaint.



GALLAGHER & LIPSHUTZ

GALLAGHER & LIPSHUTZ

GL

Business Loan Program Temporary Changes; Paycheck Protection Program.[20]

44. On April 3, 2020, the SBA opened up the PPP applications.[21]

45. Also on April 3, 2020, the SBA published an interim final rule on applicable affiliation rules[22] and a summary of affiliation rules applicable to PPP which confirmed that the affiliation rules of 13 C.F.R. § 121.301(f) applied to PPP.[23]

46. Since early April 2020, the SBA regularly posted updated guidance, FAQ ("SBA FAQ") on their website.[24]

**B. PPP Loan Eligibility**

47. A business was eligible for a first draw PPP loan based on the following size standard: together with its affiliates, it had 500 or fewer employees[25] or if it met one of the following alternative size-standards:

a. NAICS code employee-based size standard. Together with its affiliates, it meets the SBA employee-based size standard for the North American Industry Classification System ("NAICS") code applicable to its primary industry.[26]

b. NAICS category 72 (accommodations and food service) size standard. Its

---

[20] 85 FR 20811.

[21] U.S. Small Bus. Admin., *Flash Report Small Business Administration's Implementation of the Paycheck Protection Program Requirements,* (May 8, 2020), at 2 https://www.sba.gov/sites/default/files/2020-05/SBA_OIG_Report_20-14_508.pdf.

[22] 85 FR 20817.

[23] U.S. Small Bus. Admin., *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (Apr. 3, 2020), https://www.sba.gov/sites/default/files/2020-06/Affiliation%20rules%20overview%20%28for%20public%29%20v2-508.pdf, attached as **Exhibit 11**.

[24] FAQ for PPP Borrowers and Lenders, U.S. SMALL BUS. ADMIN., https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[25] 15 U.S.C. § 636(a)(36)(D)(i)(I); SBA FAQ Question 44 (published May 5, 2020); **Exhibit 11**.

[26] 15 U.S.C. § 636(a)(36)(D)(i)(II); SBA FAQ Question 3 (published April 6, 2020). SBA size standards based on industry codes are found in 13 C.F.R. § 121.201.

primary industry is in NAICS category 72 (accommodations and food service) and it has, together with its affiliates, no more than 500 employees per physical location.[27]

c. NAICS code revenue-based size standard. The size of the applicant alone (without affiliates) must not exceed the size standard designated for the industry in which the applicant is primarily engaged and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher.[28]

d. Under $15 million net worth and under $5 million net income size standard. It has, together with its affiliates, $15 million or less of tangible net worth as of March 27, 2020, and $5 million or less of average net income after Federal income taxes (excluding carry-over losses) for the last two full fiscal years before the date of application.[29]

48. A business was eligible for a second draw PPP loan if it, together with its affiliates, had 300 or fewer employees.[30] The only alternative size-standards available for second draw PPP loans was for NAICS category 72 entities (accommodations and food service), which were permitted to have 300 employees per physical location.[31] The SBA's FAQ document warned "Applicants may ***not*** use SBA's established size standards (either revenue-based or employee-based) or the alternative size standard to qualify for a Second Draw PPP Loan."[32]

---

[27] 15 U.S.C. § 636(a)(36)(D)(iii).

[28] 13 C.F.R. § 121.301(a)(1)-(2); SBA FAQ Question 2 (published April 6, 2020).

[29] 15 U.S.C. § 632(a)(5)(B); SBA FAQ Question 2 (published April 6, 2020); 86 FR 15083 at 15085 FN 5 ("Under SBA's alternative size standard, a business concern may qualify as a small business concern if it, together with any affiliates: (1) Has a maximum tangible net worth of not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the date of application is not more than $5 million.")

[30] 15 U.S.C. § 636(a)(37)(A)(iv)(I)(aa); SBA FAQ Question 44 (published May 5, 2020 and revised March 3, 2021); **Exhibit 11**.

[31] See generally 15 U.S.C. § 636(a)(37); see also SBA FAQ Question 5 (published May 5, 2020 and revised March 3, 2021); SBA FAQ Question 24 (published April 13, 2020 and revised March 3, 2021); SBA FAQ Question 63 (published March 3, 2021).

[32] SBA FAQ Question 63 (published March 3, 2021).

GALLAGHER & LIPSHUTZ

GALLAGHER & LIPSHUTZ

49. To count employees to determine PPP eligibility, applicants used (a) their average number of employees over the previous 12 months, (b) their average number of employees for calendar year 2019, OR (c) their average number of employees for each pay period during the last 12 calendar months completed prior to the loan application.[33] If the business had been operational for less than 12 months, it could use the average number of employees for each of the pay periods that it had been operational.[34] The employee test for PPP loan eligibility was a head-count test, including full-time, part-time, temporary, leased, and furloughed employees;[35] individuals employed on a part-time or other basis were counted the same as full-time employees.[36]

50. The SBA noted "all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.'"[37]

51. SBA guidance further provided that "Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business."[38]

---

[33] 13 C.F.R. § 121.106(b); SBA FAQ Question 14 (published April 6, 2020). 13 C.F.R. § 121.106 was amended (July 6, 2022) since Affiliated Defendants submitted their PPP loan applications and PPP Forgiveness applications. When Relator refers to 13 C.F.R. § 121.106, it is referring to the version that was valid an in effect (Jan. 6, 2020 to July 5, 2022) at all times relevant to this Complaint.

[34] 13 C.F.R. § 121.106(b); SBA FAQ Question 14 (published April 6, 2020).

[35] 13 C.F.R. § 121.106(a).

[36] 13 C.F.R. § 121.106(b); 15 U.S.C. § 636(a)(36)(D)(v).

[37] 85 FR 23450 at 23451.

[38] SBA FAQ Question 31 (published April 23, 2020).

52. An applicant was not required to show that it was unable to obtain credit elsewhere,[39] however, the SBA indicated the availability of alternate liquidity sources was relevant to whether an applicant could make the required good faith certification that a PPP loan was necessary.[40]

53. In addition, the SBA stated that: "Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith." Affiliation for this purpose is determined based on the rules that apply for determining eligibility for a PPP loan.[41]

**C. PPP Loan Definition of "Affiliation"**

54. The SBA defined "affiliation" as one business controlling or having the power to control another or when a third party (or parties) controls or has the power to

---

[39] 15 U.S.C. § 636(a)(36)(I).

[40] SBA FAQ Question 31 (published April 23, 2020) ("In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application. Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary. Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business. For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification."); see also SBA FAQ Question 37 (published April 26, 2020) (extending SBA FAQ Question 31 to all businesses owned by private companies with adequate sources of liquidity).

[41] SBA FAQ Question 46 (published May 13, 2020).



GALLAGHER & LIPSHUTZ GL

GL GALLAGHER & LIPSHUTZ

control both businesses.[42] The SBA's view of what constitutes "control" is expansive, and it does not matter whether control is exercised, so long as the power to control exists.

55. Control may be affirmative or negative. Negative control includes circumstances where a minority shareholder has the ability, under the concern's charter, bylaws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.[43]

56. The SBA's four affiliation rules for PPP loans are:

a. Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the board of directors or president or chief executive officer (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control if that individual or entity has the ability, under the concern's charter, bylaws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.[44]

b. Affiliation arising under stock options, convertible securities, and agreements to merge. For purposes of determining control and affiliation, options, convertible securities, and agreements to merge (including agreements in principle) are considered effective as if exercised or consummated, as the case may be, unless subject to conditions precedent which are incapable of fulfillment, speculative, conjectural, or unenforceable under state or Federal law, or where the probability of the transaction (or exercise of the rights) occurring is shown to be extremely remote. Significantly, a person or entity that controls one or more other entities cannot use options, convertible securities, or agreements to appear to eliminate control before actually doing so. SBA will not give present effect to a person's or entity's ability to divest all or part of its ownership

---

[42] See 13 C.F.R. § 121.301(f); **Exhibit 11.**

[43] U.S. Small Bus. Admin., *Small Business Compliance Guide: A Guide to the SBA's Size Program and Affiliation Rules*, https://home.treasury.gov/system/files/271/SBA-Small-Business-Compliance.pdf (July 2020) at 9.

[44] 13 C.F.R. § 121.301(f)(1); **Exhibit 11.**

interest in order to avoid a finding of affiliation.[45]

c. Affiliation based on management. Where the chief executive officer or president of an entity (or other officers, managing members, or partners who control the management of the entity) also controls the management of another entity, the two entities will be deemed affiliates under common control. Where a single person or entity that controls the board of directors or management of one entity also controls the board of directors or management of another entity, the two entities will be deemed affiliates under common control. Where a person or entity controls the management of another entity through a management agreement, the entities are deemed affiliated.[46]

d. Affiliation based on identity of interest. Where there is an identity of interest between close relatives with identical or substantially identical business or economic interests (e.g., in the same or similar industry in the same geographic area), such interests are presumed to be affiliated. This presumption may be rebutted with evidence showing that the interests are separate.[47]

### D. PPP Loan Applications

57. To receive a first draw PPP loan, borrows were required to complete and submit SBA Form 2483[48] and to receive a second draw PPP loan, borrows were required to complete and submit SBA Form 2483-SD[49] (first and second draw PPP Loan Applications collectively referred to as "PPP Loan Applications").

58. A participating financial institution (i.e., the lender) processed the PPP Loan Applications.[50] If approved, the lender funded the PPP loan using its money, which the SBA 100% guaranteed.[51]

---

[45] 13 C.F.R. § 121.301(f)(2); **Exhibit 11**.
[46] 13 C.F.R. § 121.301(f)(3); **Exhibit 11**.
[47] 13 C.F.R. § 121.301(f)(4); **Exhibit 11**.
[48] SBA Form 2483.
[49] SBA Form 2483-SD.
[50] 85 FR 20811 at 20816.
[51] Id. at 20811.



GL GALLAGHER & LIPSHUTZ

59. Both PPP Loan Applications required the applicant identify all owners of 20% or more of the applicant company.[52] For limited liability companies, the PPP Loan Applications defined "owners" as all members owning 20% or more of the company.[53]

60. The PPP Loan Applications also required the applicant identify if "the Applicant or any owner of the Applicant [is] an owner of any other business, or have common management with any other business" and if they did to "list all such businesses and describe the relationship on a separate sheet identified as addendum A"[54]

61. Finally, the PPP Loan Application required express certifications that:

a. the applicant has "read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them";[55]

b. "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)";[56]

---

[52] SBA Form 2483 at 1; see also SBA Form 2483-SD at 2.
[53] SBA Form 2483 at 3; see also SBA Form 2483-SD at 5.
[54] SBA Form 2483 at 1; see also SBA Form 2483-SD at 1.
[55] SBA Form 2483 at 2; see also SBA Form 2483-SD at 2.
[56] SBA Form 2483 at 2; see also SBA Form 2483-SD at 2 ("The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).")



GL GALLAGHER & LIPSHUTZ

c. The first draw applicant "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry" and the second draw applicant "together with its affiliates (if applicable)… employs no more than 300 employees";[57] and

d. "[T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."[58]

e. "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."[59]

62. The applicant was not eligible to receive PPP loans and the lender could not approve PPP loans without these express certifications.

63. These certifications were required for PPP loan application approval and for applicant's receipt of PPP loan funds. Each of these PPP loan application certifications was

---

[57] SBA Form 2483 at 2; see also SBA Form 2483-SD at 2.
[58] SBA Form 2483 at 2; see also SBA Form 2483-SD at 3.
[59] SBA Form 2483 at 2; see also SBA Form 2483-SD at 2.



GL GALLAGHER & LIPSHUTZ

a material condition to SBA approval, guarantee and payment of any claim submitted under the PPP. The SBA did not review PPP loan applications for approval prior to funds being disbursed; instead, it relied on the lenders to comply with SBA requirements and these certifications. The certifications were critical to the SBA's and the United States' ability to ensure only qualified and eligible loans were approved and paid.

**E. PPP Loan Forgiveness**

64. To be eligible for loan forgiveness, borrowers were required to complete SBA Form 3508 or the lender equivalent ("PPP Loan Forgiveness Application").

65. The PPP Loan Forgiveness Application required the borrower check a box "if borrower (together with affiliates, if applicable) received first draw PPP loans of $2 million or more, or second draw PPP loans of $2 million or more".[60]

66. The PPP Loan Forgiveness Application required borrowers expressly certify that: "The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."[61]

67. Borrowers were required to submit, to their lenders, their PPP Loan

---

[60] SBA Form 3508 at 1.
[61] SBA Form 3508 at 2; SBA Form 3508-S at 1.



GALLAGHER & LIPSHUTZ GL

GALLAGHER & LIPSHUTZ
GL

Forgiveness Applications plus documentation showing the permitted use of PPP loan proceeds and employment and payroll records for the relevant periods, together with certifications of accuracy.[62]

68. The lender then reviewed the application and supporting documentation and made a decision regarding loan forgiveness.[63]

69. The lender was required to perform a good faith review of the borrower's calculations and supporting documents and work with the borrower to remedy any errors the lender identifies.[64]

70. The lender had 60 days after it has received a complete forgiveness application to make a determination of the forgiveness amount, if any, and submit its determination and supporting documentation to the SBA.[65] Subject to any SBA review of the loan or loan application, the SBA paid the forgiveness amount, plus interest accrued through the date of payment, to the lender within 90 days after the lender submitted its determination to the SBA.[66]

71. For their work, PPP loan lenders were entitled to receive a fixed fee from the SBA which ranged from 1% to 5% depending on the size of the loan.[67]

## VI. <u>DEFENDANTS' FRAUDULENT SCHEME</u>

### A. Affiliated Defendants Were Not Eligible for PPP Loans

72. Relator re-alleges and incorporates the allegations of the paragraphs above

---

[62] 85 FR 38304 at 38306.
[63] <u>Id.</u>
[64] <u>Id.</u> at 38310.
[65] <u>Id.</u> at 38306.
[66] <u>Id.</u>
[67] 85 FR 20811 at 20816.

as if fully set forth herein.

73. Affiliated Defendants applied for and received PPP loans. Affiliated Defendants were not eligible for any of these loans under any of the criteria for small businesses set forth under the CARES Act and the SBA's regulations and guidance.

**1. Affiliated Defendants Were Not Eligible for PPP Loans Because They Had Over 500 Employees**

74. Affiliated Defendants were not eligible for PPP loans because they had over 500 employees amongst them and their other affiliated companies, and they shared common ownership. At the time of Affiliated Defendants' PPP Loan Applications, Michael Gaughan and his son John Gaughan maintained ownership and control of Affiliated Defendants and their other affiliated companies.

75. Affiliated Defendants were also not eligible for PPP loans because they had over 500 employees amongst them and their other affiliated companies, and because they shared common management. At the time of Affiliated Defendants' PPP Loan Applications, Michael Gaughan and his son John Gaughan maintained management of Affiliated Defendants and their other affiliated companies through positions with Affiliated Defendants such as manager, managing member, President, Director and Chief Executive Officer.

76. Affiliated Defendants were also not eligible for PPP loans because they had over 500 employees amongst their affiliated companies and because they shared an identity of interest between close relatives. At the time of Affiliated Defendants' PPP Loan Applications, Michael Gaughan and his son John Gaughan maintained Affiliated Defendants and their other affiliated companies which had identical or substantially identical business or economic interests: gaming in Nevada (i.e. hotel casinos, airport slot machines, gambling bars, pari-mutual wagering services, and gaming management).



GL GALLAGHER & LIPSHUTZ

77. Affiliated Defendants nonetheless each submitted PPP loan applications and certified that they were eligible to receive PPP loans under the SBA rules at the time and by meeting the applicable size standard.

78. Affiliated Defendants also certified their answers to whether they, "the Applicant or any owner of the Applicant [is] an owner of any other business, or have common management with, any other business" and if they did, to "list all such businesses and describe the relationship on a separate sheet identified as addendum A". Upon information and belief Affiliated Defendants did not list all of their affiliated companies on all of their PPP loan applications.

79. The total number of employees Affiliated Defendants listed amongst their first draw PPP loan applications was 692, however, this number is in fact higher because it does not include Affiliated Defendants other affiliated companies who did not apply for PPP loans. Arguably more significantly, Defendant Gaughan South Holding Company, LLC, the sole owner of Gaughan South, LLC d/b/a South Point Hotel and Casino, employed over 2,000 people during 2019 and 2020 at South Point Hotel and Casino. Thus, the number of employees between Affiliated Defendants and their other affiliated companies far exceeded the maximum size of 500 employees permitted for first-draw PPP loans.

80. The government collectively approved Affiliated Defendants for $8,013,961.00 in first draw PPP loans which they were ineligible for:

| **COMPANY** | **NUMBER OF EMPLOYEES** | **LOAN AMOUNT** | **OFFICERS** |
|---|---|---|---|
| G & M Interactive, LLC | 6 | $60,800.00[68] | **Manager** John Gaughan[69] |

[68] G & M Interactive, LLC's First Round PPP Data, attached as **Exhibit 12**.
[69] **Exhibit 1**.



GALLAGHER & LIPSHUTZ

| | | | |
|---|---|---|---|
| Gaughan Gaming Management, LLC | 4 | $73,200.00[70] | **Manager** John Gaughan[71] |
| Gaughan Gaming Nevada, LLC | 2 | $32,200.00[72] | **Manager** John Gaughan[73] |
| Hotel Nevada and Gambling Hall, Ltd., LLC | 12 | $178,100.00[74] | **Manager** Gaughan Gaming NV II, LLC<br>**Manager** John Gaughan[75] |
| Kroyer Racing Engines, LLC | 14 | $195,880.00[76] | **Manager** Michael J. Gaughan[77] |
| Las Vegas Dissemination, Inc. | 37 | $560,900.00[78] | **100% Owner** John Davis Gaughan<br>**President** Gregory Wright<br>**Secretary** Gregory Wright<br>**Treasurer** John Gaughan<br>**Director** John Gaughan[79] |
| Michael J Gaughan Airport Slot Concession, Inc. | 233 | $2,271,581.00[80] | **President** Michael Gaughan<br>**Secretary** Michael Gaughan<br>**Treasurer** Michael Gaughan<br>**Director** Michael Gaughan[81] |
| Gaughan South Holding Company, LLC | 346 | $4,819,400.00[82] | **Manager** Gaughan Straight Holdings Inc.<br>**President** Michael Gaughan<br>**Secretary** Michael Gaughan<br>**Treasurer** Michael Gaughan |

[70] Gaughan Gaming Management, LLC's First Round PPP Data, attached as **Exhibit 13.**

[71] **Exhibit 2.**

[72] Gaughan Gaming Nevada, LLC's First Round PPP Data, attached as **Exhibit 14.**

[73] **Exhibit 3.**

[74] Hotel Nevada and Gambling Hall, Ltd., LLC's First Round PPP Data and Nevada Secretary of State Business Entity Information, attached as **Exhibit 15.**

[75] Id.

[76] Kroyer Racing Engines, LLC's First Round PPP Data, attached as **Exhibit 16.**

[77] **Exhibit 5.**

[78] Las Vegas Dissemination, Inc.'s First Round PPP Data, attached as **Exhibit 17.**

[79] **Exhibit 6.**

[80] Michael J Gaughan Airport Slot Concession, Inc.'s First Round PPP Data, attached as **Exhibit 18.**

[81] **Exhibit 8.**

[82] Gaughan South Holding Company, LLC's First Round PPP Data, attached as **Exhibit 19.**



GALLAGHER & LIPSHUTZ

| | | | |
|---|---|---|---|
| | | | **Director** Michael Gaughan[83] |
| O'Aces Decatur, LLC | 30 | $129,400.00[84] | **Manager** Gaughan Gaming NV II, LLC<br>**Manager** John Gaughan[85] |
| High Street, LLC | 8 | $42,300.00[86] | **Managing Member** Gaughan Gaming NV II, LLC<br>**Manager** John Gaughan[87] |
| **TOTAL** | **692** | **$8,363,761.00** | |
| **FRAUDULENT LOANS** | | **$8,013,961.00** | |

81. The total number of employees Affiliated Defendants listed amongst their second draw PPP loan applications was 255, however, this number is in fact higher because it does not include Affiliated Defendants other affiliated companies who did not apply for PPP loans. Additionally, this number does not include the 346 employees from Affiliated Defendant Gaughan South Holding Company, LLC's first draw PPP applicants who did not apply for second draw PPP loans and the 2,000 employees at South Point Hotel and Casino. Thus, the number of employees between Affiliated Defendants and their other affiliated companies far exceeded the maximum size of 300 employees permitted for second-draw PPP loans.

82. The government collectively approved Affiliated Defendants for $2,801,532.50 in second draw PPP loans which they were ineligible for:

//

//

---

[83] **Exhibit 9.**

[84] O'Aces Decatur, LLC's First Round PPP Data and Nevada Secretary of State Business Entity Information, attached collectively as **Exhibit 20**.

[85] Id.

[86] High Street, LLC's First Round PPP Data and Nevada Secretary of State Business Entity Information, attached as **Exhibit 21**.

[87] Id.



GL GALLAGHER & LIPSHUTZ

| COMPANY | NUMBER OF EMPLOYEES | LOAN 2 AMOUNT | OFFICERS |
|---|---|---|---|
| G & M Interactive, LLC | 5 | $60,800.00[88] | **Manager** John Gaughan[89] |
| Gaughan Gaming Management, LLC | 4 | $62,180.00[90] | **Manager** John Gaughan[91] |
| Gaughan Gaming Nevada, LLC | 2 | $32,600.00[92] | **Manager** John Gaughan[93] |
| Hotel Nevada and Gambling Hall, Ltd., LLC | 28 | $230,188.00[94] | **Manager** Gaughan Gaming NV II, LLC<br>**Manager** John Gaughan[95] |
| Kroyer Racing Engines, LLC | 12 | $195,880.00[96] | **Manager** Michael J. Gaughan[97] |
| Las Vegas Dissemination, Inc. | 33 | $450,072.50[98] | **100% Owner** John Davis Gaughan<br>**President** Gregory Wright<br>**Secretary** Gregory Wright<br>**Treasurer** John Gaughan<br>**Director** John Gaughan[99] |
| Michael J Gaughan Airport Slot Concession, Inc. | 133 | $2,000,000.00[100] | **President** Michael Gaughan<br>**Secretary** Michael Gaughan<br>**Treasurer** Michael Gaughan<br>**Director** Michael Gaughan[101] |
| O'Aces Decatur, LLC | 30 | $137,670.00[102] | **Manager** Gaughan Gaming NV II, LLC |

---

[88] G & M Interactive, LLC's Second Round PPP Data, attached as **Exhibit 22**.

[89] **Exhibit 1**.

[90] Gaughan Gaming Management, LLC's Second Round PPP Data, attached as **Exhibit 23**.

[91] **Exhibit 2.**

[92] Gaughan Gaming Nevada, LLC's Second Round PPP Data, attached as **Exhibit 24**.

[93] **Exhibit 3.**

[94] Hotel Nevada and Gambling Hall, Ltd., LLC's Second Round PPP Data, attached as **Exhibit 25**.

[95] **Exhibit 15**.

[96] Kroyer Racing Engines, LLC's Second Round PPP Data, attached as **Exhibit 26**.

[97] **Exhibit 5.**

[98] Las Vegas Dissemination, Inc.'s Second Round PPP Data, attached as **Exhibit 27**.

[99] **Exhibit 6.**

[100] Michael J Gaughan Airport Slot Concession, Inc.'s Second Round PPP Data, attached as **Exhibit 28.**

[101] **Exhibit 8.**

[102] O'Aces Decatur, LLC's Second Round PPP Data, attached as **Exhibit 29**.



GALLAGHER & LIPSHUTZ

| | | | |
|---|---|---|---|
| | | | **Manager** John Gaughan[103] |
| High Street, LLC | 8 | $53,175.00[104] | **Managing Member** Gaughan Gaming NV II, LLC<br>**Manager** John Gaughan[105] |
| **TOTAL** | **255** | **$3,222,565.50** | |
| **FRAUDULENT LOANS** | | **$2,801,532.50** | |

83. Affiliated Defendants later applied for PPP loan forgiveness and the government forgave each of their loans.

**2. Affiliated Defendants Did Not Meet Alternative NAICS Code Employee or Revenue Based Size Standards Because They Were Significantly Over Those Standards**

84. Affiliated Defendants did not meet alternative NAICS code employee or revenue-based size standards to qualify for first draw PPP loans because they far exceeded the SBA size standard for the NAICS code applicable to their primary industry.

85. The size standards for the NAICS codes "are expressed either in number of employees or annual receipts in millions of dollars".[106]

86. The NAICS codes of Affiliated Defendants were as follows:

| NAICS CODE[107] | ANNUAL RECIEPTS (in millions) | EMPLOYEES | Affiliated Defendants Claiming this Code | First Draw Total Employees |
|---|---|---|---|---|
| 721120: Casino Hotels | $40.0 | - | Gaughan South Holding Company, LLC<br>Hotel Nevada and Gambling Hall, Ltd., LLC[108] | 358 |

[103] **Exhibit 20**.
[104] High Street, LLC's Second Round PPP Data, attached as **Exhibit 30**.
[105] **Exhibit 21**.
[106] 13 C.F.R. § 121.201.
[107] 13 C.F.R. § 121.201.
[108] **Exhibit 19**; **Exhibit 15**.



GALLAGHER & LIPSHUTZ

| | | | | |
|---|---|---|---|---|
| 713210: Casinos (except Casino Hotels) | $34.0 | - | Michael J Gaughan Airport Slot Concession, Inc.[109] | 233 |
| 722511: Full-Service Restaurants | $11.5 | - | O'Aces Decatur, LLC High Street, LLC[110] | 38 |
| 713290: Other Gambling Industries | $40.0 | - | Las Vegas Dissemination, Inc.[111] | 37 |
| 713990: All Other Amusement and Recreation Industries | $9.0 | - | Kroyer Racing Engines, LLC[112] | 14 |
| 551112: Offices of Other Holding Companies | $45.5 | - | G & M Interactive, LLC Gaughan Gaming Nevada, LLC[113] | 8 |
| 711410: Agents and Managers for Artists, Athletes, Entertainers and Other Public Figures | $17.5 | - | Gaughan Gaming Management, LLC[114] | 4 |

87. Affiliated Defendants' primary industry was thus 721120: Casino Hotels because it has the most employees.[115] To meet this alternative size standard, Affiliated Defendants were required to have a combined annual revenue of $40.0 million or less.

---

[109] **Exhibit 18**.

[110] **Exhibit 20**; **Exhibit 21**.

[111] **Exhibit 17**.

[112] **Exhibit 16**.

[113] **Exhibit 12**; **Exhibit 14**.

[114] **Exhibit 13**.

[115] The number of employees Affiliated Defendants had at their NAICS 721120: Casino Hotels entities is not accurately represented in the above table because their 2,000 employees at South Point Hotel and Casino are not properly accounted for. The fact Affiliated Defendants had over 2,000 employees at South Point Hotel and Casino, another 721120: Casino Hotels entity, further supports the fact that Affiliated Defendants' primary industry was 721120: Casino Hotels.



GALLAGHER & LIPSHUTZ

GL GALLAGHER & LIPSHUTZ

88. PPP loan amounts were determined by taking a business's average monthly payroll and multiplying it by 2.5.[116] An applicant's annual payroll can therefore be determined by the following equation:

$$\left(\frac{\text{PPP Loan Total}}{\text{i. e. 2.5 months of payroll}}\right) \div \left(\frac{\text{2.5 months}}{\text{to get monthly payroll}}\right) \times \left(\frac{\text{12 months}}{\text{to get annual payroll}}\right)$$

89. Using this equation, one can determine Affiliated Defendants annual payroll was $40,146,052.80, which exceeded the revenue threshold for 721120: Casino Hotels. Because they profitable are businesses, their revenue must exceed their payroll costs which shows they are in excess of their NAICS code revenue standard. Accordingly, Affiliated Defendants did not qualify for NAICS code employee or revenue-based alternative size standards.

**3. Affiliated Defendants Did Not Meet Alternative NAICS Category 72 Size Standard Because They Were Not an Accommodation or Food Service or Had Over 500 Employees Per Physical Location**

90. Affiliated Defendants also did not meet alternative NAICS Category 72[117] size standard because they were not an accommodation or food service or had more than 500 employees per physical location.

91. Affiliated Defendants' other affiliated companies Hotel Nevada and Gambling Hall, Ltd., LLC, O'Aces Decatur, LLC, and High Street, LLC, were permitted to

---

[116] SBA Form 2483 at 1.

[117] A complete list of NAICS category 72 entities is as follows: Hotels (except Casino Hotels) and Motels (721110), Casino Hotels (721120), Bed-and-Breakfast Inns (721191), All Other Traveler Accommodation (721199), RV (Recreational Vehicle) Parks and Campgrounds (721211), Recreational and Vacation Camps (except Campgrounds) (721214), Rooming and Boarding Houses, Dormitories, and Workers' Camps (721310), Food Service Contractors (722310), Caterers (722320), Mobile Food Services (722330), Drinking Places (Alcoholic Beverages) (722410), Full-Service Restaurants (722511), Limited-Service Restaurants (722513), Cafeterias, Grill Buffets, and Buffets (722514), and Snack and Nonalcoholic Beverage Bars (722515). See 13 C.F.R. § 121.201.

receive PPP loans because their NAICS codes begin with "72".

92. Affiliated Defendants Michael J Gaughan Airport Slot Concession Inc., Las Vegas Dissemination Inc., Kroyer Racing Engines LLC, G & M Interactive LLC, Gaughan Gaming Nevada LLC and Gaughan Gaming Management LLC on the other hand, as shown in above table, are not NAICS Category 72 entities because their NAICS codes do not begin with "72". Affiliated Defendants therefore did not qualify for the NAICS Code 72 alternative size standard.

93. Finally, although Gaughan South Holding Company, LLC is an NAICS Code 72 entity, it did not qualify for first draw PPP loans because it had over 500 employees for its single physical location. Gaughan South Holding Company, LLC owns Gaughan South, LLC which does business as South Point Hotel and Casino. Both entities operate at a single physical location – 9777 Las Vegas Blvd S Las Vegas, NV 89183. Additionally, during 2019 and 2020 Gaughan South, LLC doing business as South Point Hotel and Casino employed over 2,000 people. Because Gaughan South, LLC and Gaughan South Holding Company, LLC employed over 500 employees at their single physical location, they were ineligible for the NAICS Category 72 alternative size standard and therefore ineligible for first draw PPP loans.

**4. Affiliated Defendants Did Not Meet Alternative Net Worth and Revenue Size Standard Because They Had Significantly Over $15 Million in Tangible Net Worth and Over $5 Million Net Income**

94. Finally, Affiliated Defendants did not meet alternative net worth and revenue size standard to qualify for first draw PPP loans because their tangible net worth far exceeded $15 million on March 27, 2020 and because they had over $5 million in net income after Federal income taxes for the last two full fiscal years before the date of application. Specifically, on March 27, 2020, Affiliated Defendants and their other



GL GALLAGHER & LIPSHUTZ

affiliated companies owned over 20 properties in Nevada which were, at that time, collectively valued at **over half a billion dollars.**

### B. Affiliated Defendants Made False Certifications on Their PPP Loans Applications and PPP Loan Forgiveness Applications and Those Certifications Were Material to The Government's Decision to Pay

95. Affiliated Defendants submitted numerous false claims to the government in the form of PPP Loan Applications. On the PPP Loan Applications, Affiliated Defendants' falsely certified that they were legitimate small business concerns when they sought loan proceeds through the PPP and that they were eligible for PPP loans under the SBA's rules at the time they submitted their applications, including the affiliation rules.

96. Affiliated Defendants also certified their answers on the PPP Loan Applications to whether they, "the Applicant or any owner of the Applicant [is] an owner of any other business, or have common management with, any other business" and if they did, to "list all such businesses and describe the relationship on a separate sheet identified as addendum A". Upon information and belief Affiliated Defendants did not list all of their affiliated companies on all of their PPP loan applications.

97. Finally, Affiliated Defendants also falsely certified on their PPP Loan Applications that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant".

98. When making these false certifications, Affiliated Defendants intended to and did induce the SBA to approve, distribute and forgive PPP loans to Affiliated Defendants. In doing so, Affiliated Defendants submitted false claims in the form of false certifications, which misrepresented their need, eligibility and true size of their businesses and resulted in millions of dollars in improper payments by the SBA and the Treasury. Affiliated Defendants' false claims and certifications were material to the SBA's decision to approve,



GL GALLAGHER & LIPSHUTZ

distribute and forgive their PPP loans.

99. Affiliated Defendants' intentional misrepresentations regarding their need, eligibility and size as small, which were contained in their certifications submitted to the SBA, were false within the meaning of the False Claims Act.

100. Claims for payments submitted to the SBA, in part or in whole, which were the result of Affiliated Defendants' misrepresentations regarding their need, eligibility and size as small, were false within the meaning of the False Claims Act.

101. Affiliated Defendants' misrepresentations regarding their need, eligibility and size as small caused them to be approved for loans which were void ab initio and caused the submission of claims for payment that were false when made.

102. Affiliated Defendants' misrepresentations regarding their need, eligibility and size as small were made knowingly and with the intent to cause the submission of false claims to the SBA.

103. The SBA approved, distributed and forgave PPP loans to Affiliated Defendants based on Affiliated Defendants' false claims, and as a result the United States has incurred and continues to incur significant damages due to Affiliated Defendants' intentional misrepresentations regarding their eligibility and size as small.

104. By falsely certifying their eligibility to participate in the PPP and causing subsequent claims for loans to be made that Affiliated Defendants knew were ineligible for payment by the SBA, Affiliated Defendants also made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, as described herein.



GALLAGHER & LIPSHUTZ

GALLAGHER & LIPSHUTZ

## VII. CLAIMS FOR RELIEF

### A. First Claim for Relief

FALSE CLAIMS ACT: PRESENTING OR CAUSING A PRESENTATION OF FALSE OR FRAUDULENT CLAIMS
31 U.S.C. § 3729(a)(l)(A)

105. Relator re-alleges and incorporates the allegations of the paragraphs above as if fully set forth herein.

106. Defendants knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval to the United States Small Business Administration including PPP Loan Applications, PPP Loan Forgiveness Applications, lender submission regarding the same and supporting documentation for PPP loans for which they were ineligible to receive.

107. Said claims were presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of the fact they were false or fraudulent.

108. The United States Government has been damaged as a result of Defendants' violations of the False Claims Act, because they have paid the false or fraudulent claims.

### B. Second Claim for Relief

FALSE CLAIMS ACT: CAUSING FALSE STATEMENTS OR RECORDS MATERIAL TO FALSE CLAIMS TO BE MADE OR USED
31 U.S.C. § 3729(a)(l)(B)

109. Relator re-alleges and incorporates the allegations of the paragraphs above as if fully set forth herein.

110. Defendants knowingly made, used, and caused to be made or used, false records or statements – i.e., false statements regarding eligibility for PPP loans on PPP Loan Applications, PPP Loan Forgiveness Applications and lender submission regarding the same – to get PPP loans and processing fees paid and approved by the United States

GALLAGHER & LIPSHUTZ

that they were ineligible for.

111. Defendants' false certifications and representations were made for the purpose of receiving payment for false or fraudulent claims, and payment of the false or fraudulent claims was a reasonable and foreseeable consequence of Defendants' false statements and actions.

112. The false certifications and representations made, and caused to be made, by Defendants were material to the United States' payment of these false claims.

113. Said false records or statements were made with actual knowledge of their false or fraudulent nature, or with reckless disregard or deliberate ignorance of whether or not they were false or fraudulent.

114. The United States Government has been damaged as a result of Defendants' violations of the False Claims Act because they have paid fraudulent claims.

**C. Prayer for Relief**

WHEREFORE, the Relator prays for a jury trial and the following relief and the entry of judgment against Defendants, jointly and severally, as follows:

i. Award to the UNITED STATES OF AMERICA of the maximum amount allowed pursuant to 31 U.S.C. § 3730 et seq. and 42 U.S.C. § 1320a-7a, et seq.;

ii. Award to Relator, NEVADANS AGAINST FRAUD ON THE GOVERNMENT, LLC, of the maximum amount allowed pursuant to 31 U.S.C. § 3730, and the costs and expenses and reasonable attorneys' fees pursuant to 31 U.S.C. § 3730(d);

iii. For an award of interest, attorneys' fees and all costs of suit; and

//

GALLAGHER & LIPSHUTZ
GL

iv. For such other and further relief as the Court may deem just and appropriate under the circumstances.

DATED: June 13, 2025

GALLAGHER & LIPSHUTZ, PLLC

Kathleen H. Gallagher, Esq.
Nevada Bar No. 15043
Jeremy M. Lipshutz, MD, Esq.
Nevada Bar No. 15267
6120 S. Fort Apache Rd. #100
Las Vegas, NV 89148
*Attorneys for Relator*
*Nevadans Against Fraud*
*on the Government, LLC*